IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

**MISTY FARMER, Individually and on**                            **PLAINTIFF**
**Behalf of All Others Similarly Situated**

vs.                            No. 3:21-cv-3027-TLB

**BOONE COUNTY INDEPENDENT LIVING, INC.**                      **DEFENDANT**

**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR CONDITIONAL
CERTIFICATION, FOR APPROVAL AND DISTRIBUTION OF NOTICE
AND FOR DISCLOSURE OF CONTACT INFORMATION**

## I.    INTRODUCTION

Plaintiff has alleged that Boone County Independent Living, Inc., has a uniform policy and practice of improperly paying its Direct Care Aides in violation of the Fair Labor Standards Act ("FLSA"), including not paying them for all hours worked and not paying them for all mileage driven in the course of their duties. Accordingly, Plaintiff requests that this Court conditionally certify a collective action pursuant to Section 216(b) of the FLSA. In addition, Plaintiff requests approval of Plaintiff's practical, common-sense plan for facilitating notice to potential class members. Because the clock is running against all potential opt-ins, Plaintiff requests expedited review of Plaintiff's Motion as described below.

## II.    ARGUMENT

**A.    This Court Should Conditionally Certify the Proposed Collective Action for Notice Purposes.**

This Court should conditionally certify the proposed collective action for notice

Page 1 of 20
Misty Farmer, et al. v. Boone County Independent Living, Inc.
U.S.D.C. (W.D. Ark.) No. 3:21-cv-3027-TLB
Brief in Support of Plaintiff's Motion for Conditional Certification

purposes. Section 1 below explains what conditional certification in an FLSA case means, what Plaintiff must prove in order to have this case conditionally certified as a collective action, and why early certification and notice to the putative class is important. Section 2 describes how and why Plaintiff has met the lenient standard for conditional certification of a collective action at this stage of the case.

1. <u>Plaintiff may obtain conditional certification of a collective upon a modest factual showing that she is "similarly situated" to the other proposed collective members.</u>

In addition to suing on her own behalf, Plaintiff may obtain early conditional certification of a collective action if she makes a modest factual showing that she is "similarly situated" to other collective members. Section 216(b) of the FLSA states as follows: "An action . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b).

Such actions are referred to as "collective actions," and a majority of courts have adopted a two-tiered approach to certification of collective actions.[1] *See McQuay v. Am. Int'l Group*, No. 4:01-cv-661-BRW, 2002 U.S. Dist. LEXIS 21307, at *5 (E.D. Ark. Oct. 28, 2002) (citing *Mooney v. Aramco Services Co.*, 54 F.3d 1207 (5th Cir. 1995)); *Turner v. Concentrix Servs.*, No. 1:18-cv-1072-SOH, 2020 U.S. Dist. LEXIS 16785, at *8 (W.D. Ark.

---

[1] A "collective action" differs from a Rule 23 class action in several respects. In a Rule 23 <u>class</u> action, "a putative class acquires an independent legal status once it is certified . . . . Under the FLSA, by contrast, 'conditional certification' does not produce a class with an independent legal status or join additional parties to the action. The sole consequence of conditional certification is the sending of court-approved written notice to employees, who in turn become parties to a collective action only by filing written consent with the court." *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1530 (2013) (citing *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171–72 (1989) and 29 U.S.C. § 216(b)). In other words, one must "opt in" to an FLSA collective action, whereas in a Rule 23 class action class members are part of the lawsuit unless they "opt out."

Page 2 of 20
Misty Farmer, et al. v. Boone County Independent Living, Inc.
U.S.D.C. (W.D. Ark.) No. 3:21-cv-3027-TLB
Brief in Support of Plaintiff's Motion for Conditional Certification

Feb. 3, 2020) (noting that the two-tiered approach is the "prevailing approach").

This two-tiered approach envisions an initial "conditional certification" for notice purposes early on in a case (known as the "notice stage") and then a second stage to evaluate the propriety of certification when a defendant moves for decertification following the close of discovery. This two-step certification inquiry is described in *Mooney v. Aramco Services Co.* as follows:

> The first determination is made at the so-called "notice-stage." At the notice stage, the district court makes a decision—usually based only on the pleadings and any affidavits which have been submitted—whether notice of the action should be given to potential class members.
>
> Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery.
>
> The second determination is typically precipitated by a motion for "decertification" by the Defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives—*i.e.*, the original Plaintiffs—proceed to trial on their individual claims.

54 F.3d at 1213–14. Courts in the Eastern and Western Districts of Arkansas have followed the two-tiered approach outlined in *Mooney. See, e.g., Carter v. Pathfinder, Inc.*, No. 4:17-cv-459-JM, 2018 U.S. Dist. LEXIS 222554, at *2 (E.D. Ark. Sep. 11, 2018); *Watson v. Surf-Frac Wellhead Equipment Co., Inc.*, No. 4:11-cv-843-KGB, 2012 U.S. Dist. LEXIS 150968, at *2–3 (E.D. Ark. Oct. 18, 2012); *In re Pilgrim's Pride Fair Labor Stds. Act Litig.*, 2008 U.S. Dist. LEXIS 93966, at *6–9 (W.D. Ark. Mar. 13, 2008); *Freeman v.*

Page 3 of 20
Misty Farmer, et al. v. Boone County Independent Living, Inc.
U.S.D.C. (W.D. Ark.) No. 3:21-cv-3027-TLB
Brief in Support of Plaintiff's Motion for Conditional Certification

*Wal-Mart Stores, Inc.*, 256 F. Supp. 2d 941 (W.D. Ark. 2003).

At the notice stage, a court does not make findings on legal issues or focus on whether there has been an actual violation of the law. *Pilgrim's Pride*, 2008 U.S. Dist. LEXIS 93966, at *9. The Court also refrains from making credibility determinations or resolving contradictory evidence. *Id.* The plaintiff's burden is "lenient" and may be met by making substantial allegations of class-wide discrimination that are supported by affidavits. *Freeman*, 256 F. Supp. 2d at 941.

Not only is fact finding as to the merits inappropriate at the notice stage, but so is fact finding as to the issue of whether the plaintiff and other collective members are similarly situated. *See Pilgrim's Pride*, 2008 U.S. Dist. LEXIS 93966, at *9. (stating that courts do not *resolve contradictory evidence*); s*ee also*, *generally*, *Longcrier v. HL-A Co., Inc.*, 595 F. Supp. 2d 1218 (S.D. Ala. 2008). In *Longcrier v. HL-A Co., Inc.*, six plaintiffs in the Southern District of Alabama moved to certify a collective action consisting of all hourly employees who were employed by the defendant in various capacities at its automobile parts manufacturing facility at any time during the three years preceding the filing of the complaint. 595 F. Supp. 2d at 1220-21. Even with so broad a proposed collective, the court granted plaintiffs' motion for certification and court-approved notice. *Id.* at 1242.

The defendant in *Longcrier* argued that the plaintiffs were not "similarly situated" because the hourly positions held by putative collective members covered a wide range of job titles, duties, pay ranges, and supervisors. *Id.* at 1238. Over the defendant's objections, the court held that plaintiffs' declarations and complaint allegations amounted to a substantial showing that all defendant's nonexempt employees were treated similarly and

Page 4 of 20
Misty Farmer, et al. v. Boone County Independent Living, Inc.
U.S.D.C. (W.D. Ark.) No. 3:21-cv-3027-TLB
Brief in Support of Plaintiff's Motion for Conditional Certification

were subject to the same pay practices and policies with regard to "off-the-clock" work, rounding hours, and unpaid work during meal breaks. *Id.*

Importantly, the court further explained how factual disputes over the "similarly situated" requirement should be resolved at the second stage:

> At most, Defendant's evidence may create disputes of fact as to whether all hourly employees are or are not subject to the same policies. Those factual disputes may properly be addressed after discovery at the second stage of the FLSA collective action process . . . , but they do not constitute a valid basis for denying conditional class certification today.

*Id.* (citing *Carmody v. Florida Ctr. For Recovery, Inc.*, No. 05-14295, 2006 U.S. Dist. LEXIS 81640, at *4 (S.D. Fla. Nov. 7, 2006) (explaining that it would be improper to engage in fact-finding to determine conclusively whether the putative plaintiffs are similarly situated, where pleadings and supporting affidavits alleged facts sufficient to satisfy conditional certification inquiry)).

Because of this lenient standard, and because courts do not resolve disputes of fact at this stage, courts regularly grant conditional certification based solely upon a plaintiff's complaint and supporting affidavits. *See Littlefield v. Dealer Warranty Services, LLC*, 679 F. Supp. 2d 1014, 1017 (E.D. Mo. 2010) ("In a typical case, the court decides whether to conditionally certify a class based solely on the plaintiffs' affidavits."); *Parker v. Rowland Express, Inc.*, 492 F. Supp. 2d 1159, 1164 (D. Minn. 2007) ("At the notice stage, the district court makes a decision—usually based only on the pleadings and any affidavits which have been submitted—whether notice of the action should be given to potential class members."); *Resendiz-Ramirez v. P & H Forestry, LLC*, 515 F. Supp. 2d 937, 940 (W.D. Ark. 2007); *Craven v. Neeley's Serv. Ctr.*, No. 4:19-cv-4115-SOH, 2020 U.S. Dist.

Page 5 of 20
Misty Farmer, et al. v. Boone County Independent Living, Inc.
U.S.D.C. (W.D. Ark.) No. 3:21-cv-3027-TLB
Brief in Support of Plaintiff's Motion for Conditional Certification

LEXIS 74112, at *7-8 (W.D. Ark. Apr. 28, 2020) (certifying a collective based on a single declaration).

Further, a plaintiff need not show that her position is identical to the putative collective members' positions, only that her position is similar to those of the absent collective members. *Freeman*, 256 F. Supp. 2d at 945 (citing *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996)). The "similarly situated" determination requires only a modest factual showing. *Perez-Benites v. Candy Brand, LLC*, No. 07-cv-1048, 2008 U.S. Dist. LEXIS 91402, at *3 (W.D. Ark. Oct. 31, 2008). A plaintiff may satisfy the similarly situated requirement by showing that the plaintiff and putative members were victims of a common decision, policy, or plan of the employer that affected all class members in a similar fashion. *Smith v. Frac Tech Services, Ltd.*, 4:09-cv-679-JLH, 2009 U.S. Dist. LEXIS 109930, at *13 (E.D. Ark. Nov. 24, 2009) (*citing Resendiz-Ramirez*, 515 F. Supp. 2d at 937); *Kautsch v. Premier Communications*, 504 F. Supp. 2d 685 (W.D. Mo. 2007); see also *Thiessen v. GE Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001) (first-round "similarly situated" determination "requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan.").

Notably, several district courts in Arkansas have granted conditional certification of a collective of employees against defendants when only one plaintiff appeared at the beginning of the case. The Honorable Leon Holmes granted conditional certification in a single-plaintiff case, holding that "[t]he undersigned does not require plaintiffs in a Fair Labor Standards Act case to establish that other potential class members desire to opt in." *Adams et al. v. United Cerebral Palsy of Central Arkansas, Inc., et al.*, No. 4:16-cv-930-JLH, 2017 U.S. Dist. LEXIS 177470 at *3-4 (E.D. Ark. Dec. 28, 2016). Similarly, in

Page 6 of 20
Misty Farmer, et al. v. Boone County Independent Living, Inc.
U.S.D.C. (W.D. Ark.) No. 3:21-cv-3027-TLB
Brief in Support of Plaintiff's Motion for Conditional Certification

*Harrison v. Hog Taxi, LLC*, the Honorable Timothy L. Brooks rejected an argument that a plaintiff should be required to demonstrate that others wanted to opt into a putative collective action, finding that "such a requirement at this first stage of certification is not appropriate." No. 5:19-cv-5025, 2019 U.S. Dist. LEXIS 153980, at *10 (W.D. Ark. Sep. 10, 2019). It simply is not required that there be more than one plaintiff to initiate a conditional collective action under Section 216 of the FLSA. Indeed, the purposes of the certification process are best served when one or a few vocal employees assert rights on behalf of the larger group against the defendant.

In general, the benefits of the two-tiered approach from *Mooney* are best realized when certification and notice are granted as soon as possible at the beginning of the case, prior to discovery. The decertification stage mitigates the breadth and leniency of the first stage by allowing for decertification if it turns out, after discovery is completed, that the collective is not sufficiently similar to allow for an efficient adjudication of material, common issues and facts.

2. <u>This Court should conditionally certify the collective proposed by Plaintiff.</u>

This case is at the notice stage and is subject to the lenient standard of proof. The pleadings and attached exhibits contain an abundance of information supporting Plaintiff's claim that there are many other individuals similarly situated. Plaintiff represents a group of employees who worked for Defendant as Direct Care Aides. Every individual who worked as a Direct Care Aide was subject to Defendant's universal practices, which violated the FLSA, among other laws.

Defendant employed Plaintiff as a Direct Care Aide. Declaration of Misty Farmer ("Decl. Farmer"), Ex. 7, ¶ 5; Answer, ECF No. 7, ¶ 17. Defendant employed other Direct

Page 7 of 20
Misty Farmer, et al. v. Boone County Independent Living, Inc.
U.S.D.C. (W.D. Ark.) No. 3:21-cv-3027-TLB
Brief in Support of Plaintiff's Motion for Conditional Certification

Care Aides as well. Decl. Farmer ¶ 6; Answer ¶ 18. Plaintiff's primary job duties as a Direct Care Aide were to assist Defendant's clients on an individual basis with various tasks such as cooking, cleaning, bathing, and running errands, as well as general help with everyday tasks and medical needs. Decl. Farmer ¶ 7; see also Answer ¶ 17. Other Direct Care Aides had the same or similar job duties as Plaintiff. Decl. Farmer ¶ 7; Answer ¶ 19.

Until December of 2020, Defendant required Plaintiff to arrive at the client's house at 10 p.m. on Friday evening for her weekend shift and to stay at the client's house until Monday morning around 7:30 a.m. Decl. Farmer ¶ 8; Answer ¶ 22. This was the normal work schedule for Direct Care Aides working the weekend shift. Decl. Farmer ¶ 9; Answer ¶ 23. As a result, Plaintiff and other Direct Care Aides regularly worked over 40 hours per week.

Defendant required Plaintiff and other Direct Care Aides to remain with the clients during their entire shifts. Decl. Farmer ¶¶ 10–11. However, Defendant categorized certain hours of Plaintiff's and other Direct Care Aides' shifts as "down time" or "sleep time" and did not pay them for these hours. Decl. Farmer ¶¶ 10–11; Answer ¶¶ 26–27. Plaintiff and other Direct Care Aides still had to monitor and attend to their clients during "down time" or "sleep time." Decl. Farmer ¶¶ 12–18. For example, Direct Care Aides were required to perform "safety checks" on the clients at least twice per night. Id. at ¶ 13.

Plaintiff's experiences were not unique to one client, but instead were necessitated by the nature of Direct Care Aides' work. The "safety check" requirement was a uniform requirement of which Defendant informed Plaintiff at training with other Direct Care Aides. Id. at ¶ 13. Plaintiff worked with three different clients, and her experience with all three

Page 8 of 20
Misty Farmer, et al. v. Boone County Independent Living, Inc.
U.S.D.C. (W.D. Ark.) No. 3:21-cv-3027-TLB
Brief in Support of Plaintiff's Motion for Conditional Certification

required her to be up multiple times per night. Id. at ¶ 15. She spoke with other Direct Care Aides, all of whom shared the experience of having to be up multiple times per night with their clients. Id. at ¶ 15. The types of clients that Direct Care Aides care for require frequent attention throughout the night because of problems like mobility issues, eating disorders, and other behavioral issues. Some client goals required Direct Care Aides to monitor clients in the middle of the night. Id. at ¶ 14. For example, Plaintiff was required to work with one of her clients to keep him from eating in the middle of the night. Id. at ¶ 14. As a result of these interruptions and responsibilities, Plaintiff and other Direct Care Aides did not get 5 uninterrupted hours of sleep per night. Id. at ¶¶ 17–18.

Defendant also had a policy of under-reimbursing its employees for mileage expenses incurred in working for Defendant. Defendant's employees drove their personal vehicles in the course of performing work for Defendant. Decl. Farmer ¶ 20; Answer ¶ 39. Direct Care Aides regularly used their personal vehicles to take their clients shopping, to the movie theater, or to other places the client wanted to go. Decl. Farmer ¶ 20. Defendant reimbursed Direct Care Aides for some of the miles they drove at a rate of $0.42 per mile, below the applicable IRS mileage rate. Decl. Farmer ¶ 21; see also Standard Mileage Rates, https://www.irs.gov/tax-professionals/standard-mileage-rates.

Defendant did not reimburse Direct Care Aides for all the miles they drove in the course of their duties; instead, Defendant capped mileage reimbursement at 250 miles per client per month. Decl. Farmer ¶ 21. The cap was determined by client, not by employee, so that miles driven by a substitute worker counted against the monthly mile total. Id. at ¶ 21. Plaintiff estimates that in at least three or four months of her employment, she drove more than 250 miles, and she was not reimbursed for the miles over 250 in

Page 9 of 20
Misty Farmer, et al. v. Boone County Independent Living, Inc.
U.S.D.C. (W.D. Ark.) No. 3:21-cv-3027-TLB
Brief in Support of Plaintiff's Motion for Conditional Certification

those months. Id. at ¶ 22.

Based on Plaintiff's experience talking with other Direct Care Aides for Defendant, Plaintiff believes that others would join if notice were sent to them. Id. at ¶ 23.

In sum, Plaintiff and the collective members were all subject to the same pay practices and procedures which resulted in the violations of the FLSA alleged by Plaintiff. These initial facts are more than sufficient to meet Plaintiff's lenient burden to show that the potential collective members are similarly situated. Therefore, this Court should certify the collective proposed by Plaintiff and make appropriate orders for notice.

**B.  This Court Should Approve Plaintiff's Proposed Collective Action Notice and Consent Forms, to Approve Plaintiff to Send Notice through U.S. Mail and Email, and Order Defendant to Provide Contact Information for the Collective**

After the Court grants conditional certification for notice purposes, the Court will need to make decisions about how to facilitate notice. For the reasons given below, Plaintiff requests that the Court (1) approve the form and content of Plaintiff's proposed mail Notice, Ex. 1, and mail Consent form, Ex. 2, for distribution to members of the collective via U.S. Mail; (2) approve the form and content of the email messages to be sent to members of the collective, Ex. 3, and the Consent form to accompany the electronic notices, Ex. 4; (3) order Defendant to provide the relevant contact information of potential members of the collective; and (4) grant a period of ninety days in which to distribute the Notice and Consents and allow for opt-in plaintiffs to file Consents to Join.

1. <u>The form and scope of Plaintiff's proposed notice is appropriate.</u>

In furtherance of the FLSA's "broad remedial" purpose, courts have the authority to notify potential opt-in plaintiffs that they may join an existing action early in the proceedings. *Hoffmann-La Roche, Inc. v. Sperling,* 493 U.S. 165, 173 (1989); *See also*

Page 10 of 20
Misty Farmer, et al. v. Boone County Independent Living, Inc.
U.S.D.C. (W.D. Ark.) No. 3:21-cv-3027-TLB
Brief in Support of Plaintiff's Motion for Conditional Certification

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036, 1047 (Mar. 22, 2016); *Hussein v. Capital Bldg. Servs. Grp., Inc.,* 152 F. Supp. 3d 1182, 1190 (D. Minn. 2015). A district court "has broad discretion regarding the 'details' of the notice sent to potential opt-in plaintiffs." *Butler v. DirectSat USA, LLC*, 876 F. Supp. 2d 560, 574 (D. Md. 2012). Notice informs potential plaintiffs "of the facts needed to make an informed decision whether to opt-in." *Fisher v. Michigan Bell Telephone Company*, 665 F. Supp. 2d 819, 829 (E.D. Mich. 2009). While there are no well-defined rules for the form of notice, the general requirement is that the notice must be fair and accurate. *See e.g., id.; Heckler v. DK Funding, LLC*, 502 F. Supp. 2d 777, 780 (N.D. Ill 2007).

Further, courts should exercise their broad discretion to facilitate notice in a way that reaches the largest possible number of potential opt-in plaintiffs. *See Perrin v. Papa John's Int'l, Inc.*, No. 4:09-cv-1335-AGF, 2011 U.S. Dist. LEXIS 117046, at *5 (E.D. Mo. Oct. 11, 2011) ("The better course is to determine what constitutes fair and proper notice based on the facts of each case...At this stage of the litigation, justice is most readily served by notice reaching the largest number of potential plaintiffs.") (internal citations and quotation marks omitted).

Plaintiff's proposed FLSA collective action notice, Ex. 1, provides potential opt-in plaintiffs with an accurate description of this lawsuit, their legal rights, and the process for participating in the case. The notice is substantially similar to collective action notices that have been distributed in numerous other collective actions. *See, e.g., Craven*, 2020 U.S. Dist. LEXIS 74112, at *12; *Casarez v. Producers Serv. Corp.*, No. 2:17-cv-1086, 2018 U.S. Dist. LEXIS 88370, at *21 (S.D. Ohio May 25, 2018); *Adams*, 2017 U.S. Dist. LEXIS 177470, at *3. It should be approved. *See Hoffmann-La Roche*, 493 U.S. at 172, 174

Page 11 of 20
Misty Farmer, et al. v. Boone County Independent Living, Inc.
U.S.D.C. (W.D. Ark.) No. 3:21-cv-3027-TLB
Brief in Support of Plaintiff's Motion for Conditional Certification

(explaining that employees should receive "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate," and that notice should "respect judicial neutrality . . . tak[ing] care to avoid even the appearance of judicial endorsement of the merits of the action.").

Plaintiff asks this Court for approval to send notice to all individuals who worked as Direct Care Aides for Defendant at any time on or after April 21, 2018, which includes the three years preceding the filing of Plaintiff's Complaint. This captures every qualified worker who could potentially fall within the maximum three-year statute of limitations under the FLSA. Furthermore, this keeps the door open for this Court to grant equitable tolling to some or all potential plaintiffs if the facts support it.[2] To facilitate this request, Plaintiff requests approval of Plaintiff's proposed notice-related documents, method of distribution, and 90-day opt-in period, as set forth below.

2. <u>Distribution of collective action notices by paper and electronic means is becoming standard.</u>

Because in recent years electronic communications have become more reliable than traditional mail as a means of reaching collective action members, Plaintiff asks the Court to authorize distribution of notice using a combination of traditional and electronic methods. Specifically, Plaintiff proposes to send notice to potential plaintiffs via U.S. Mail

---

[2] The doctrine of equitable tolling can, under the right circumstances, toll the statute of limitations in FLSA cases. *See, e.g.*, *De Lopez v. Ozark Mt. Poultry, Inc.*, No. 5:13-CV-05272, 2014 U.S. Dist. LEXIS 201949, at *12-13 (W.D. Ark. June 17, 2014) (granting equitable tolling where there was a long period of time between filing of motion for collective action and the order granting the motion); *Whitworth v. French Quarters Partners, LLC*, No. 6:13-CV-6003, 2013 U.S. Dist. LEXIS 202768, at *10 (W.D. Ark. July 31, 2013); *see also, Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169 (6th Cir. 2008); *Adams v. Tyson Foods, Inc.*, No. 07-CV-4019, 2007 U.S. Dist. LEXIS 38511 (W.D. Ark. May 25, 2007). Indeed, courts have held that the equitable tolling doctrine "is read into every federal statute of limitation." *Kamens v. Summit Stainless, Inc.*, 586 F. Supp. 324, 328 (E.D. Penn. 1984) (quoting *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946)).

Page 12 of 20
Misty Farmer, et al. v. Boone County Independent Living, Inc.
U.S.D.C. (W.D. Ark.) No. 3:21-cv-3027-TLB
Brief in Support of Plaintiff's Motion for Conditional Certification

and email and to send a follow-up email after thirty days. Electronic distribution of collective action notices is "in line with the current nationwide trend. Moreover, it advances the remedial purpose of the FLSA, because service of the notice by two separate methods increases the likelihood that all potential opt-in plaintiffs will receive notice of the lawsuit, and of their opportunity to participate." *Atkinson v. TeleTech Holdings, Inc.*, No. 3:14-cv-253, 2015 U.S. Dist. LEXIS 23630, at *12 (S.D. Ohio Feb. 26, 2015). See also *Butler v. DirectSat USA, LLC*, 876 F. Supp. 2d 560, 575 (D. Md. 2012) ("With regard to [plaintiff's request to use] email to notify potential plaintiffs of this litigation, communication through email is now the norm.") (internal editing and quotation marks omitted); *Gronefeld v. Integrated Prod. Servs.*, No. 5:16-CV-55, 2016 U.S. Dist. LEXIS 192476, at *17-18 (W.D. Tex. Apr. 26, 2016) ("email is not the wave of the future; it is the wave of the last decade and a half.") (internal editing marks omitted). In some cases, Courts have endorsed notice via three or more methods at once. In *Irvine v. Destination Wild Dunes Mgmt.*, the Court reasoned as follows:

> The request that notice be distributed via direct mail, email and text messaging appears eminently reasonable to the Court. This has become a much more mobile society with one's email address and cell phone number serving as the most consistent and reliable method of communication. Political candidates now routinely seek out their supporters' cell phone numbers and email addresses because traditional methods of communication via regular mail and land line telephone numbers quickly become obsolete.

132 F. Supp. 3d 707, 711 (D.S.C. 2015).

Distribution of Notice via email avoids many of the delivery problems that result from distributing Notice via U.S. Mail alone. *See* Ex. 6, Decl. of Josh Sanford ("Sanford Decl.") ¶¶ 5–13. In counsel's experience, Notices (and even Consents) in other cases have been lost even when the addresses were correct. *Id*. at ¶¶ 6-9. Plaintiff's counsel

Page 13 of 20
Misty Farmer, et al. v. Boone County Independent Living, Inc.
U.S.D.C. (W.D. Ark.) No. 3:21-cv-3027-TLB
Brief in Support of Plaintiff's Motion for Conditional Certification

has received telephone calls from recipients of follow-up postcards who did not receive the original notice. *Id*. at ¶ 10. Using email as a means of distributing notice helps alleviate these problems. Unlike traditional mail, email messages do not get "lost in the mail." Email is nearly instantaneous and often provides the sender with immediate feedback if the message is undeliverable. Email addresses are also "portable" in the sense that, although a person's physical address changes when he or she relocates residences, the person can and often does maintain his or her same email address. All of these facts increase the likelihood that notice will actually be received by the collective member. In sum, notice by email furthers the purpose of sending out the notice by traditional U.S. Mail: giving the collective members actual notice of these proceedings so that they can make an informed decision about whether to participate.

This Court should approve of Plaintiff's proposed procedure for disseminating notice by email, which is simple and easy for the Court to monitor. Plaintiff's proposed email text, Ex. 3, simply directs the recipient to the attached court-approved Notice and provides a link to www.docusign.com or an equivalent online signature service,[3] where the recipient can access an electronic version of the Consent to Join (Ex. 4). The text also gives instructions for signing the Consent electronically to avoid some minor but common mistakes. Putative collective members who wish to join the lawsuit can then choose to print, sign, and return a paper copy of the Consent to Join form or electronically sign the Consent to Join form using the electronic signature service. This is similar to the process

---

[3] More information about DocuSign is available at https://www.docusign.com. Many courts have already approved of the use of electronic signatures generally. *See Dyson v. Stuart Petroleum Testers, Inc.*, 308 F.R.D. 510, 518 (W.D. Tex. 2015); *White v. Integrated Elec. Techs., Inc.*, No. 11-2186, 2013 U.S. Dist. LEXIS 83298, at *39 (E.D. La. June 13, 2013); *Jones v. JGC Dall. LLC*, No. 3:11-CV-2743-O, 2012 U.S. Dist. LEXIS 185042, at *18 (N.D. Tex. Nov. 29, 2012).

Page 14 of 20
Misty Farmer, et al. v. Boone County Independent Living, Inc.
U.S.D.C. (W.D. Ark.) No. 3:21-cv-3027-TLB
**Brief in Support of Plaintiff's Motion for Conditional Certification**

approved by Arkansas district courts in *Turner v. Concentrix Servs.*, No. 1:18-cv-1072, 2020 U.S. Dist. LEXIS 16785, at *23 (W.D. Ark. Feb. 3, 2020); and *Berry v. Razor's Edge Pizza, Inc.*, No. 4:19-cv-6-JM, 2019 U.S. Dist. LEXIS 221296, at *6-7 (E.D. Ark. Sep. 13, 2019).

       3. <u>This Court should approve of the sending of a Follow-Up Email or Postcard thirty (30) days after Notice is sent.</u>

Plaintiff requests permission to send a follow-up notice thirty (30) days after the first Notice is mailed. The follow-up notice will be in the form of a reminder email (Exhibit 3) or, if Defendants do not have working email addresses for the collective members or the Court simply prefers an all-paper notice process, a reminder postcard (Exhibit 5). Because of the aforementioned issues with notice delivery by U.S. Mail, Plaintiff's request is fair, reasonable and calculated to meet the goal of distributing notice, which is to actually notify putative class members of the litigation and permit a reasonable opportunity to join. Allowing Plaintiff's counsel to send the follow-up email or postcard provides a fair and equitable solution to ensure that all members of the proposed collective who want to join the lawsuit are able to, including ensuring that collective members whose consents to join were mailed (or electronically submitted) but not received are made aware of this fact. *See* Decl. Sanford at ¶ 15. District courts in the Eighth Circuit regularly approve of reminder notices. *See, e.g.*, *Turner*, 2020 U.S. Dist. LEXIS 16785, at *25; *Berry*, 2019 U.S. Dist. LEXIS 221296, at *7; *Coates v. Dassault Falcon Jet Corp.*, No. 4:17-cv-372-JLH, 2017 U.S. Dist. LEXIS 192345, at *12 (E.D. Ark. Nov. 21, 2017); *De Lopez v. Ozark Mt. Poultry, Inc.*, No. 5:13-cv-5272, 2014 U.S. Dist. LEXIS 201949, *12 (W.D. Ark. June 17, 2014); *Harger v. Fairway Mgmt.*, 2016 U.S. Dist. LEXIS 74373, *12 (W.D. Mo. June 8, 2016).

Page 15 of 20
Misty Farmer, et al. v. Boone County Independent Living, Inc.
U.S.D.C. (W.D. Ark.) No. 3:21-cv-3027-TLB
Brief in Support of Plaintiff's Motion for Conditional Certification

4. <u>Ninety days is a common and reasonable opt-in period.</u>

Plaintiff requests a period of 90 days during which to distribute notice and file opt-in plaintiffs' consent forms with the Court. "Notice periods may vary, but numerous courts around the country have authorized ninety-day opt-in periods for collective actions." *Butler v. DirectSat USA, LLC*, 876 F. Supp. 2d 560, 575 (D. Md. 2012); *see also Turner*, 2020 U.S. Dist. LEXIS 16785, at *27 (granting a ninety-day opt-in period); *Teramura v. Walgreen Co.*, No. 5:12-cv-05244-JLH, 2013 U.S. Dist. LEXIS 196027, *11 (W.D. Ark. Mar. 7, 2013) (same); *Watson v. Surf-Frac Wellhead Equipment Co., Inc.*, No. 4:11-cv-843-KGB, 2012 U.S. Dist. LEXIS 150968, at *10 (E.D. Ark. Oct. 18, 2012) (same). Many of the potential collective members may have current addresses and phone numbers that differ from Defendants' records, and a ninety-day opt-in period will allow a reasonable time for Plaintiff's counsel to deal with returned mail and get notices to their intended recipients.

5. <u>This Court should order Defendants to provide the names, last known mailing addresses, phone numbers, and last known work and personal email addresses of potential collective members in an electronically manipulatable format.</u>

To facilitate the sending of the Notice and Consent to Join, this Court should order Defendants to provide names and contact information for collective members. *Hoffmann-La Roche*, 493 U.S. 165, 170 (1989). Plaintiff asks this Court to provide for the following information no later than seven days after entry of an Order certifying this case as a collective action for each individual who meets the collective definition: (1) name, including any aliases he or she may have gone by or goes by now; (2) last known mailing address; (3) any and all phone numbers of which Defendant is aware; and (4) any and all email addresses of which Defendants are aware, whether personal or employer-

Page 16 of 20
Misty Farmer, et al. v. Boone County Independent Living, Inc.
U.S.D.C. (W.D. Ark.) No. 3:21-cv-3027-TLB
Brief in Support of Plaintiff's Motion for Conditional Certification

sponsored. This information is in Defendants' possession, not Plaintiff's, and it is standard practice for courts to order the disclosure of such information in collective actions. *See, e.g.*, *Turner*, 2020 U.S. Dist. LEXIS 16785, at *27; *Bradley v. Crittenden Cty.*, No. 3:18-cv-29-DPM, 2018 U.S. Dist. LEXIS 188771, at *3 (E.D. Ark. Oct. 5, 2018). Plaintiff requests that this Court direct Defendants to provide this information in a manipulatable electronic format such as Microsoft Word or Excel. Any other manner of providing the contact information will only result in unnecessary delay and expense.

### III. EXPEDITED REVIEW REQUESTED

Plaintiff requests expedited consideration of the certification motion. Plaintiffs in collective actions are entitled to such treatment. *Adams*, 2017 U.S. Dist. LEXIS 177470, at *3 ("Because this case needs to be expedited, the Court will not write a lengthy opinion discussing the law of conditional certification."). The Honorable Brian Miller recently expedited a decision to certify a collective just <u>three days</u> after the end of certification briefing. *Olsen v. Clay Cty.*, No. 3:18-cv-129 BSM, 2018 U.S. Dist. LEXIS 194866 (E.D. Ark. Nov. 15, 2018). "Sending notice to potential collective members early in a case facilitates the broad remedial purpose of the FLSA and promotes efficient case management." *Boudreaux v. Schlumberger Tech. Corp.*, No. 6:14-2267, 2015 U.S. Dist. LEXIS 22870 (W.D. La., Feb. 25, 2015). In FLSA collective actions—unlike Rule 23 class actions—the statute of limitations for the FLSA claims of potential opt-in plaintiffs is *not tolled* by a plaintiff's initial filing of the complaint absent a Court order. 29 U.S.C. § 256(b). Thus, delay in disseminating notice to potential plaintiffs can prejudice their rights. *See Gortat v. Capala Bros., Inc.*, No. 07-cv-3629, 2010 WL 1423018, at *9 (E.D.N.Y. Apr. 9, 2010) ("Because the statute of limitations for FLSA claims continues to run for each

Page 17 of 20
Misty Farmer, et al. v. Boone County Independent Living, Inc.
U.S.D.C. (W.D. Ark.) No. 3:21-cv-3027-TLB
Brief in Support of Plaintiff's Motion for Conditional Certification

individual plaintiff until he or she opts in . . . early certification and notice are favored in order to protect plaintiffs' rights."); *Smith v. Lowe's Companies, Inc.*, No. 2:04-cv-774, 2005 WL 6742234, at *3–4 (S.D. Ohio May 11, 2005) (Because "statute of limitations period continues to run against each potential collective member . . . it is *widely accepted* that, at the notice stage . . . the plaintiff's burden . . . is *extremely light.*") (emphasis added).

## IV.   CONCLUSION

Plaintiff has met the lenient burden imposed at the conditional certification stage. Because Defendants' policies that underlie Plaintiff's allegations of FLSA violations are the same for Plaintiff and all of the collective members, Plaintiff and the collective members are similarly situated as victims of a common decision, policy, or plan of the employer that affected all collective members in a similar fashion. Accordingly, the Court should certify the collective as requested by Plaintiff. For the foregoing reasons, Plaintiff respectfully requests that this Court conditionally certify this case as a collective action on behalf of all Direct Care Aides who were employed by Defendant and who were not paid for "sleep time" or "down time" during at least one shift and/or who used their personal vehicles in performing work for Defendant on or after April 21, 2018, and that the Court adopt the following notice plan:

| DATE | EVENT |
|---|---|
| **7 Days from Order Approving** | Defendants to produce the names, last known addresses, and last |

Page 18 of 20
Misty Farmer, et al. v. Boone County Independent Living, Inc.
U.S.D.C. (W.D. Ark.) No. 3:21-cv-3027-TLB
Brief in Support of Plaintiff's Motion for Conditional Certification

| | |
|---|---|
| **Notice to Collective Members** | known email addresses of the Collective Members in a usable electronic format. |
| **7 Days from the date that Defendants produce Collective Members' contact information** | Plaintiff's Counsel to send by U.S. Mail and email a copy of the Court-approved Notice and Consent Form to the Collective Members. |
| **90 Days from Date Notice is Sent to Collective Members** | The Collective Members shall have 90 days to return their signed Consent forms for filing with the Court. |
| **30 Days from Date Notice is Sent to Collective Members** | Plaintiff's Counsel is authorized to send a follow-up notice by email or postcard to those Collective Members who did not respond to the mailed notice. |

Respectfully submitted,

**PLAINTIFF MISTY FARMER, Individually and on Behalf of All Others Similarly Situated**

Page 19 of 20
Misty Farmer, et al. v. Boone County Independent Living, Inc.
U.S.D.C. (W.D. Ark.) No. 3:21-cv-3027-TLB
Brief in Support of Plaintiff's Motion for Conditional Certification

          SANFORD LAW FIRM, PLLC
          Kirkpatrick Plaza
          10800 Financial Centre Pkwy, Suite 510
          Little Rock, Arkansas 72211
          Telephone: (800) 615-4946
          Facsimile: (888) 787-2040

          Josh Sanford
          Ark. Bar No. 2001037
          josh@sanfordlawfirm.com

**Page 20 of 20**
**Misty Farmer, et al. v. Boone County Independent Living, Inc.**
**U.S.D.C. (W.D. Ark.) No. 3:21-cv-3027-TLB**
**Brief in Support of Plaintiff's Motion for Conditional Certification**